NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                        :
EDWIN RIBOT AND CINDY TOMAINI,          :
                                        :
                Plaintiffs,             :    Civil Action No. 09-5888 (JAP)
        v.                              :
                                        :
RAMON L. CAMACHO, et al.,               :    **OPINION**
                                        :
                Defendants.             :
_____  :

PISANO, District Judge.

Presently before the Court is a motion for summary judgment filed by Defendants Ramon L. Camacho ("Officer Camacho"), Sam Yoo ("Officer Yoo"), Marshall Brown ("Officer Brown"), Joseph Kennedy ("Officer Kennedy"), the City of Long Branch, and the City of Long Branch Police Department (collectively, "Defendants"). Plaintiffs Edwin Ribot ("Ribot") and Cindy Tomaini (collectively, "Plaintiffs") oppose the motion. For the reasons that follow, the Court will grant in part and deny in part Defendants' motion for summary judgment.

**I.      BACKGROUND**

On September 9, 2007, Plaintiffs attended a barbecue in Long Branch, New Jersey hosted by Adrian Ribot ("Adrian"), Plaintiff Ribot's cousin, and his wife at the time, Alessandra Ribot. Edwin Ribot Dep. 35:19-36:24; Adrian Ribot Dep. 9:18-10:8. During the course of the barbeque, Ribot and Adrian became involved in a physical altercation. Edwin Ribot Dep. 53:5-9; Adrian Ribot Dep. 18:20-22:4; Tomaini Dep. 46:7-49:1. After they were separated, Tomaini and Adrian began arguing from a distance in the backyard. Tomaini Dep. 55:9-24.

At that point, Officers Brown, Camacho, and Yoo arrived at the barbeque in response to a disturbance complaint. Def.'s Ex. H; Ex. I. Upon arriving, they heard loud arguing the backyard. Def.'s Ex. H; Ex. I. According to Officer Brown, Tomaini was yelling at Adrian and continued to insist that he be arrested. Brown Dep. 125:8-127:1. Officer Brown claims that Tomaini appeared to be highly intoxicated at the time and was warned several times that she would be arrested if she did not calm down. Brown Dep. 127:1-21. When she failed to do so and attempted to push past the Officers in what Officer Brown perceived as an attempt to physically confront or assault Adrian or his wife, Tomaini was arrested. *Id.* Tomaini claims that she was handcuffed by Officer Kennedy without any warning or discussion, and that he refused to explain why she was being arrested. Tomaini Dep. 61:9-64:18.

After her arrest, Tomaini was taken to the Long Branch Police Station. While in the booking room—where she was handcuffed with her hands behind her back—Tomaini claims that she stood up and was instructed by Officer Kennedy to sit back down. Tomaini Dep. 73:19-75:15. According to Tomaini, she was then told to move to a different bench and subsequently thrown by Officer Kennedy into a wall. Tomaini Dep. 76:13-86:14. She claims that she hit her right arm on an electrical outlet and her head on the cinderblocks on the wall before falling onto the bench. *Id.* Officer Kennedy admits that he pushed Tomaini onto the bench, but claims that he did so only after she continued to refuse to comply with his orders to sit down. Def.'s Ex. I. Tomaini was treated by paramedics for an injury to her arm before being released from the station. Tomaini Dep. 89:16-17.

Around the same time that Tomaini was being arrested at the barbeque, Officer Yoo was speaking with Ribot. Yoo Dep. 144:17-145:6. Officer Yoo claims that Ribot became agitated and angry when he saw Tomaini being handcuffed, and, after being warned to calm down,

charged at Officer Kennedy at which point he was placed under arrest.  Yoo Dep. 144:17-152:22.  According to Officer Yoo, Ribot resisted the arrest, and Officers Yoo and Camacho then carried him down a staircase to the backyard.  Yoo Dep. 152:14-166:14.  When Ribot continued to struggle with the officers and refused to be handcuffed, Officer Yoo forced him to the ground and sprayed his face with pepper spray.  Yoo Dep. 172:15-176:1.  Because Ribot continued to struggle with the officers, Officer Yoo says he struck him three times in his ribcage area with his fist.  Yoo Dep. 176:2-178:7.

Ribot testified to different sequence of events.  He claims that, immediately upon exiting outside, he was grabbed by two police officers and pushed down the staircase.  Edwin Ribot Dep. 66:11-68:19.  He asserts that he was then struck in the head by one officer and in the back by the other.  Edwin Ribot Dep. 67:6-19.  After being handcuffed, he claims that he was sprayed with pepper spray and continuously beaten, at certain points with an object that felt like a broom handle, until he lost consciousness.  Edwin Ribot Dep. 67:6-82:5.  Ribot was then taken to Monmouth Medical Center for treatment for various injuries, and, while at the hospital, asserts that he overheard Officers Yoo and another officer discussing beating him and using racial slurs.  Edwin Ribot Dep. 84:13-85:10; 94:7-97:21.

Following their arrests, Ribot and Tomaini were given citations and charged with disorderly persons offenses.  Camacho Dep. 94:3-96:21.  The charges, however, were ultimately administratively dismissed.  *Id.*  On October 27, 2009, Ribot and Tomaini filed a Complaint against Defendants[1] in the Superior Court of New Jersey, Monmouth County.  In their Complaint, Plaintiffs assert numerous causes of action, including: assault and battery, conspiracy in violation of 42 U.S.C. § 1985, due process violations in contravention of the U.S.

---

[1] Because Plaintiffs have not identified the "John Doe" or "ABC Inc." defendants named in the Complaint and have not provided any evidence supporting a claim against them, those unnamed individuals and entities must be dismissed at this time.  *See, e.g.*, *Rodriguez v. City of Passaic*, 730 F. Supp. 1314, 1319 n.7 (D.N.J. 1990).

3

Constitution, state constitutional violations, negligence, negligent hiring, supervision and retention, respondeat superior, negligent infliction of emotional distress, and intentional infliction of emotional distress.[2]  Defendants removed the action to this Court on November 18, 2009, and filed the instant motion for summary judgment on January 13, 2012.

## II.     STANDARD OF REVIEW

To prevail on a motion for summary judgment, the moving party must establish "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The substantive law identifies which facts are "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986*)*.  In determining whether a genuine dispute of material fact exists, the court must view the facts in the light most favorable to the non-moving party and extend all reasonable inferences to that party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Stephens v. Kerrigan,* 122 F.3d 171, 176-77 (3d Cir. 1997).  The Court is not to "weigh the evidence and determine the truth of the matter," but instead need only determine whether a genuine issue necessitates a trial.  *Anderson*, 477 U.S. at 249.

The moving party bears the initial burden of demonstrating the absence of a genuine issue, regardless of which party ultimately would have the burden of persuasion at trial.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Once that showing has been made, the burden then shifts to the non-moving party to identify, by affidavits or otherwise, specific facts showing the existence of a genuine issue for trial.  *Id.* at 324.  The non-moving party may not rest upon the mere allegations or denials of its pleadings, *id.*, and must offer admissible evidence establishing

---

[2] On March 1, 2010, the Court dismissed Count Ten of Plaintiffs' Complaint, a request for punitive damages, as duplicative.  *See* Dkt. Entry 9.

4

a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matushita*, 475 U.S. at 586.

## III. DISCUSSION

### A. Excessive Force and Assault and Battery Claims

#### 1. *Individual Officer Defendants*

Plaintiffs first assert claims for excessive force[3] and assault and battery in connection with their arrests on September 9, 2007. Defendants argue that they are entitled to summary judgment on those claims because the force that they used was objectively reasonable under the circumstances and because they are immune from suit under the New Jersey Tort Claims Act and federal law.

Under New Jersey law, a law enforcement officer "may use such force as is reasonably necessary under the circumstances" to effect an arrest. *Hanson v. United States*, 712 F. Supp. 2d 321, 329-30 (D.N.J. 2010)(internal citations omitted). Where excessive force is used, the officer may be liable for assault and battery. *Id.* If, however, the officer acted "in good faith in the execution or enforcement" of the law, he is entitled to immunity from suit under the New Jersey Tort Claims Act. *See* N.J.S.A. 59:3-3.

Similarly, in actions under federal law, the doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)(internal citations omitted). To determine whether a defendant is entitled to qualified immunity requires a two-step inquiry: (1)

---

[3] Although Plaintiffs do not frame their federal constitutional claim as an excessive force claim under 42 U.S.C. § 1983, the Court will construe it as such; indeed, both Plaintiffs and Defendants outline the standards for and argue at length about excessive force claims under § 1983, and Plaintiffs refer to their suit as a "Section 1983 action." *See* Pl.'s Br. at 17-18. Furthermore, because Plaintiffs' assault and battery and excessive force claims go hand in hand, the Court will address them together.

whether the defendant's conduct violated the plaintiff's statutory or constitutional rights; and (2) whether the right or rights in question were clearly established at the time of the violation. *Schneyder v. Smith*, 653 F.3d 313, 318 (3d Cir. 2011).

In the instant case, to determine whether Plaintiffs' excessive force and assault and battery claims can proceed past the summary judgment stage, the Court must first analyze the officers' conduct under the objective reasonableness standard. *See Mellot v. Heemer*, 161 F.3d 117, 121 (3d Cir. 1998)(quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989))("all claims that law enforcement officers have used excessive force . . . in the course of a[ ] . . . 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach"); *Jimenez v. New Jersey,* 245 F. Supp. 2d 584, 588 (D.N.J. 2003)(quoting *Wildoner v. Borough of Ramsey,* 162 N.J. 375 (2000))("The New Jersey Supreme Court established that '[t]he same standard of objective reasonableness that applies in § 1983 actions also governs questions of good faith arising under the Tort Claims Act.'"). Under that standard, officers' actions must be analyzed "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." *Kopec v. Tate,* 361 F.3d 772, 776 (3d Cir. 2004)(quoting *Graham,* 490 U.S. at 397). Factors to consider in making the reasonableness determination include: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 776-77 (quoting *Graham,* 490 U.S. at 396). A court may also consider "the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Id.* at 777.

6

Here, the Court concludes that genuine disputes of material fact exist as to whether the officers used excessive force against Ribot and Tomaini. With regard to Ribot's arrest, Officer Yoo and Ribot testified to a significantly different version of events. Indeed, Officer Yoo stated that Ribot was placed under arrest after attempting to charge at Officer Kennedy, and that, because Ribot continued to resist arrest, he and Officer Camacho had to carry him down a staircase, spray him with pepper spray, and strike him three times in the ribcage area. Yoo Dep. 144:17-178:7. Ribot, on the other hand, claims that he was pushed down the staircase, struck in the head and back by both officers and, *after* being handcuffed, sprayed with pepper spray and continuously beaten, at certain points with an object that felt like a broom handle, until he lost consciousness.[4] Edwin Ribot Dep. 67:6-82:5. Accordingly, numerous disputes of material fact exist with regard to the circumstances and extent of force applied during Ribot's arrest, and, viewing the evidence in the light most favorable to Ribot,[5] a reasonable jury could conclude that Officer Yoo's and Camcacho's conduct was objectively unreasonable. *See, e.g., Kopec*, 361 F.3d at 776-77; *Hurt v. City of Atlantic City*, 2010 WL 702193, at *8 (D.N.J. Feb. 24, 2010)(denying summary judgment because "it is for the jury to determine whether [defendant police officers] physically assaulted Plaintiff after he was handcuffed and subdued on the ground").

Similarly, differing versions of the facts surrounding Tomaini's arrest preclude the Court from concluding that Officer Kennedy's conduct was objectively reasonable as a matter of law. Although Officer Kennedy claims that he merely pushed Tomaini onto a bench in the booking room after she refused to comply with his orders to sit down—and that "this minimal use of

---

[4] Alessandra Ribot also testified that Ribot was thrown down the stairs, sprayed with pepper spray, and struck numerous times, including with a stick-like object, even after he was handcuffed. Alessandra Ribot Dep. 22:1-33:14.

[5] Because Defendants claim immunity from Plaintiffs' claims, the Court must view the factual allegations in the light most favorable to Plaintiffs. *See Wright v. City of Philadelphia*, 409 F.3d 595, 597 (3d Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

force is objectively reasonable," Def.'s Br. at 4—Tomaini testified that she was thrown against the wall by Officer Kennedy, resulting in an injury to her arm and causing her head to strike the wall.  Tomaini Dep. 73:19-86:14.  If a jury were to credit Tomaini's testimony, it could reasonably conclude that Officer Kennedy's use of force was unreasonable under the circumstances.  *See, e.g.*, *Ference v. Township of Hamilton,* 538 F.Supp.2d 785, 808-11 (D.N.J.2008) (denying summary judgment on excessive force claim where plaintiff was pushed at police station after being arrested); *Rodriguez v. McEady*, 2011 WL 5156111, at *4 (D.N.J. Oct. 28, 2011)(pushing, threatening, and handcuffing of plaintiff by police officer found sufficient to raise issue of fact as to reasonableness of force used); *Lamb v. Wysocki*, 2008 WL 1732973, at *6 (D.N.J. Apr. 10, 2008)(pushing and throwing of plaintiff and raising handcuffed arms causing shoulder strain deemed sufficient to constitute violation of Fourth Amendment)

      Furthermore, both Ribot's and Tomaini's rights were clearly established at the time of their arrests.  *See Schneyder*, 653 F.3d at 318 (explaining that second prong of qualified immunity analysis requires inquiry into whether rights in question were clearly established at time of claimed violation). With regard to Ribot, it was clearly established that utilizing excessive force and striking a subdued arrestee amounts to a constitutional violation.  *See Lamb*, 2008 WL 1732973, at *7 (citing *Albright v. Oliver*, 510 U.S. 266, 281 (1994))("The Fourth Amendment provides an explicit textual source of constitutional protection against an individual's right to be free from police applications of excessive force."); *Rodriguez*, 2011 WL 5156111, at *4-5 (compiling cases standing for the proposition that intentionally striking or beating a subdued arrestee constitutes a constitutional violation).  Likewise, with regard to Tomaini, "the right of arrestees not to be subjected to undue force at a police station is clearly established."  *Woodley v. Al-Ayoubi*, 2011 WL 4594204, at *8 (D.N.J. Sept. 27, 2011); *see*

8

*Ference*, 538 F. Supp. 2d at 812 (clearly established that police officer could not apply force after plaintiff was arrested and did not pose a threat). Accordingly, because a reasonable jury could conclude that Officers Yoo, Camacho, and Kennedy used excessive force, and because those officers are not entitled to qualified immunity or immunity under the New Jersey Tort Claims Act,[6] the Court will deny summary judgment as to Plaintiffs' excessive force and assault and battery claims against those Defendants. However, because Plaintiffs do not appear to assert that Officer Brown applied unlawful force or engaged in conduct that would support an excessive force or assault and battery claim against him—and because the Court's review of the record reveals that such a claim would not be supported by the evidence—Officer Brown is entitled to summary judgment at this time.

*2. City of Long Branch and City of Long Branch Police Department*

Plaintiffs also seek to hold the City of Long Branch and its Police Department[7] liable in connection with their arrests. It is well-settled that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). For recovery to be available, the alleged constitutional violation must carry out either an official policy of the municipality or a custom so "well-settled as to virtually constitute law." *McTernan v. City of York*, 564 F.3d 636, 657-58 (3d Cir. 2009). Where a plaintiff alleges a failure to train claim against a municipality, the municipality can only be held liable if the failure amounts to "deliberate indifference to the [constitutional] rights of persons with whom the police come in contact." *City of Canton v. Harris*, 489 U.S. 378, 388-90 (1989)(plaintiff must show

---

[6] As outlined above, Defendants' "qualified immunity and good faith immunity defenses rise or fall on the same 'objective reasonableness' standard." *Brittingham v. City of Camden*, 2009 WL 1410740, at *10 (D.N.J. May 18, 2009).

[7] The Court notes that "[i]n Section 1983 actions, police departments cannot be sued in conjunction with municipalities because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." *Padilla v. Twp. of Cherry Hill*, 110. F. App'x 272, 278 (3d Cir. 2010). Thus, for purposes of § 1983, they are considered a single entity. *See Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997).

specific training deficiencies and pattern of violations or training that is obviously necessary to avoid such violations).

Here, Plaintiffs have failed to set forth evidence supporting the imposition of municipal liability. In their opposition brief, they merely set forth the standards outlined above and then claim, without support and without citation to the record, that "a reasonable jury could conclude" that the City of Long Branch and its Police Department should be held liable under those standards. *See* Pl.'s Br. 10-11, 17-27. However, such conclusory assertions, without more, are insufficient to withstand summary judgment.[8] Accordingly, the City of Long Branch and the City of Long Branch Police Department are entitled to summary judgment on Plaintiffs' excessive force claim.

Likewise, summary judgment is also appropriate on Plaintiffs' state law assault and battery claims. Indeed, under the New Jersey Tort Claims Act, N.J.S.A. 59:2-10, public entities are provided immunity from liability "for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct," including tortuous intentional conduct by an employee. *See Velez v. City of Jersey City*, 180 N.J. 284, 289 (2004); *Hoag v. Brown*, 397 N.J. Super. 34, 54 (App. Div. 2007); *Merman v. City of Camden*, 824 F. Supp. 2d 581, 597 (D.N.J. 2010)(dismissing assault and battery claims as barred by the Tort Claims Act); *Ward v. Barnes*, 545 F. Supp. 2d 400, 420-21 (D.N.J. 2008)("[t]here is no basis for permitting respondeat superior liability to public entities on the theor[y] of [assault and] battery"). Accordingly, the City of Long Branch and the City of Long Branch Police Department are entitled to summary judgment on Plaintiffs' excessive force and assault and battery claims.

---

[8] To the extent that Plaintiffs cite record evidence, they only do so by generally referencing voluminous deposition transcripts that do not provide support for their claims. Furthermore, the Court's review of the record, including all of the deposition transcripts attached to both parties' briefs, makes clear that Plaintiffs' claims cannot proceed past the summary judgment stage.

B.      Conspiracy Under 42 U.S.C. § 1985

Plaintiffs next assert a claim under 42 U.S.C. § 1985(3). "Section 1985(3) permits an action to be brought by one injured by a conspiracy formed for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." *Estate of Oliva v. N.J. Dep't of Law & Pub. Safety, Div. of State Police,* 604 F.3d 788, 802 (3d Cir. 2010)(internal citation and quotation marks omitted). To sustain a claim under §1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *Lake v. Arnold,* 112 F.3d 682, 685 (3d Cir. 1997) (internal citations omitted).

Here, Plaintiffs' have not alleged or set forth evidence of a conspiracy, the threshold element of their § 1985 claim. Indeed, other than simply stating that "a jury could absolutely find that there was a conspiracy and a cover-up among the entire Department," Pl.'s Br. at 29, Plaintiffs do not provide evidence that such a conspiracy existed or that any act was taken in furtherance of that conspiracy. *See Lake*, 114 F.3d at 685. Furthermore, the arguments that they do set forth are based primarily on mere conjecture and conclusory assertions, and are insufficient to withstand summary judgment. *See Jackson v. Gordon*, 145 F. App'x 774, 778 (3d Cir. 2005)("Civil rights conspiracy claims that are based only on suspicion and speculation instead of fact do not state a claim"). Accordingly, Defendants are entitled to summary judgment on Plaintiffs' claim under 42 U.S.C. § 1985.

C.   Due Process

Plaintiffs also assert that Defendants violated their due process rights[9] in contravention of the Fourteenth Amendment of the United States Constitution. To establish a violation of procedural due process, a plaintiff must establish that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty and property, and (2) the procedures available to him did not provide him with due process of law." *Hill v. Borough of Kutztown,* 455 F.3d 225, 234 (3d Cir. 2006).

Here, in support of their procedural due process claim, Plaintiffs appear to assert that Defendants failed to follow certain federal, state, county, and local guidelines in connection with their arrests and the complaints they filed thereafter. However, Plaintiffs do not set forth evidence to substantiate their assertions, and provide no citations to case law providing legal support for their claim. Furthermore, they fail to specify what liberty interest was deprived and what specific procedural safeguards were lacking. *See Hill*, 455 F.3d at 234. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' due process claim.

D.   Remaining State Law Claims

In their Complaint, Plaintiffs also assert claims of negligence, negligent hiring, supervision, and retention, respondeat superior,[10] negligent and intentional infliction of emotional distress, and state constitutional violations. They do not, however, meaningfully

---

[9] Plaintiffs assert both a procedural due process claim and a substantive due process claim. With regard to the substantive due process claim, as set forth above, "all claims that law enforcement officers have used excessive force . . . in the course of a[ ] . . . 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Mellot v. Heemer*, 161 F.3d 117, 121 (3d Cir. 1998)(quoting *Graham*, 490 U.S. at 395). Thus, the Court has already addressed the merits of Plaintiffs' claim under the applicable Fourth Amendment objective reasonableness standard, and to the extent that Plaintiffs' assert that the more general substantive due process standard applies or that their substantive due process rights were violated separate and apart from their excessive force allegations, Defendants are entitled to summary judgment. *See id.*; *Mitchell v. Luckenbill*, 680 F. Supp. 2d 672, 685 (M.D. Pa. 2010).

[10] The only arguments Plaintiffs make with regard to their respondeat superior and negligent hiring, supervision, and retention claims are based on § 1983 standards; the Court considered and rejected those arguments above.

address those claims in their brief or otherwise respond to the arguments Defendants raise in support of their motion.  *Player v. Motiva Enters. LLC*, 240 F. App'x 513, 522 n.4 (3d Cir. 2007); *Skirpan v. Pinnacle Health Hosps.*, 2010 WL 3632536, at *6 (M.D. Pa. Apr. 21, 2010) ("[w]here a plaintiff has brought a cause of action which is challenged through motion for summary judgment as legally insufficient, it is incumbent upon the plaintiff to affirmatively respond to the merits of a summary judgment motion.").  Indeed, they simply state that summary judgment is inappropriate as to those claims because "the record is rife with evidence of factual disputes," but do not identify what specific factual disputes preclude summary judgment or cite to any record evidence or case law in support of their claims.  Pl.'s Br. at 30.  Accordingly, the Court will grant summary judgment in favor of Defendants on Plaintiffs' negligence, negligent hiring, supervision, and retention, respondeat superior, negligent and intentional infliction of emotional distress, and state constitutional claims.  *See Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001).

## IV.   CONCLUSION

For the reasons above, Defendants' motion for summary judgment is granted in part and denied in part.  An appropriate Order will follow.

/s/ JOEL A. PISANO
United States District Judge

Dated: June 25, 2012